**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Separation Engineers, Inc., | ) | Civil Action No. 4:12-cv-1713 |
| | ) | |
| Plaintiff | ) | JURY TRIAL DEMANDED |
| | ) | |
| vs. | ) | |
| | ) | |
| ConocoPhillips Company, | ) | |
| | ) | |
| Phillips 66 Company, and | ) | |
| | ) | |
| WRB Refining LP | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff Separation Engineers, Inc. ("SEI" or "Plaintiff"), brings this action against defendants ConocoPhillips Company ("COP"), Phillips 66 Company ("Phillips 66") and WRB Refining LP ("WRB Refining"), collectively referred to herein as "Defendants," and based on information and belief, alleges as follows:

**THE PARTIES**

1.     Plaintiff is a Texas corporation with its principal place of business in Harris County, Texas.

2.     COP is a corporation organized under the laws of the State of Delaware.  COP maintains a principal place of business at 600 N. Dairy Ashford Road, Houston, Texas 77079 and may be served with process by serving its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

3.     Phillips 66 is a corporation organized under the laws of the State of Delaware. Phillips 66 maintains a principal place of business at 600 N. Dairy Ashford Road, Houston,

Texas 77079 and may be served with process by serving its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

4.      WRB Refining is a limited partnership organized under the laws of the State of Delaware.  WRB Refining maintains a principal place of business at 600 N. Dairy Ashford Road, Houston, Texas 77079 and may be served with process by serving its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

5.      WRB Refining LP is, was, or at times may also have been known as WRB Refining LLC.  On information and belief, WRB Refining LP is the name of the current joint venture of the facility owner as described above and, to the extent WRB Refining LLC was at any time the name of the joint venture owner of the facility described herein, WRB appears to be its successor in this regard.

## JURISDICTION AND VENUE

6.      The patent claim in this action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction over the patent claim under 28 U.S.C. §§ 1331 and 1338(a).  This Court has supplemental jurisdiction over SEI's non-patent claims under 28 U.S.C. § 1367(a).

7.      This Court has personal jurisdiction over all Defendants, each of whom has its principal place of business in Houston, Texas.

8.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and 1400(b). Defendants reside in this judicial district.

## FACTUAL BACKGROUND

9.      At least as early as 2003, SEI was engaged in the business of developing and commercializing separation technologies for clients in the oil, gas, refining and petrochemical

industries.   At all times relevant, Ms. Charlotte Droughton ("Droughton") was and is the President and owner of SEI.

10.    In or around the fourth quarter of 2003, COP's Supplier Diversity Manager, Hubert Jones, introduced Droughton to Howard Foy, a manager in COP's Refining Technologies.

11.    COP expressed to Droughton an interest in learning about SEI's separation technologies which COP would find useful for producing, refining and processing crude oils, especially heavy or otherwise unconventional crude oils.

12.    Over the ensuing months, Droughton discussed with Foy and others at COP the contributions SEI would be able to make to COP's business and in particular with respect to separation technologies developed by SEI.

13.    In June 2004, SEI and COP entered into an agreement that would allow COP access to Confidential Information from SEI for a limited purpose and under conditions of strict confidentiality.  ("The 2004 Confidential Disclosure Agreement.")

14.    SEI has attached a true and correct copy of the 2004 Confidential Disclosure Agreement as Exhibit A and incorporates it by reference.

15.    The 2004 Confidential Disclosure Agreement's stated and exclusive Purpose for allowing COP access to SEI's Confidential Information was so that the parties might determine whether they wish to contemplate a joint development or other business arrangement for the further development of such technology.

16.    The 2004 Confidential Disclosure Agreement placed strict limits on what COP could do with the Confidential Information it received from SEI.

3

17.     Under the 2004 Confidential Disclosure Agreement, when COP received SEI's Confidential Information, COP agreed it would treat it as confidential and would not divulge it to any third party or use the Confidential Information itself, without SEI's prior written consent, except in connection with the stated Purpose of the agreement.

18.     COP was obligated to inform each of its officers, employees, and agents who received any SEI Confidential Information of the provisions of the 2004 Confidential Disclosure Agreement.  In the event that such officers, employees and agents had not previously entered into a separate agreement with COP safeguarding proprietary information, which separate agreement would be applicable to the Confidential Information SEI disclosed under the 2004 Confidentiality Agreement, COP would require them to agree in writing to be bound by the provisions of the 2004 Confidential Disclosure Agreement in the same manner as COP was bound by the agreement.

19.     Under the 2004 Confidential Disclosure Agreement, COP was obligated to protect the Confidential Information by using the same degree of care, but no less than a reasonable degree of care, to prevent the unauthorized disclosure of the SEI Confidential Information, as COP uses to protect its own confidential information of like nature.

20.     In June 2005, SEI and COP entered into a Technology Assessment Agreement. ("The Technology Assessment Agreement.")

21.     SEI has attached a true and correct copy of the Technology Assessment Agreement as Exhibit B and incorporates it by reference.

22.     The Technology Assessment Agreement acknowledged that SEI had developed proprietary separations additives and processes ("SEI Technology") directed at the removal of

impurities, including asphaltenes, metals, particles, water, acids and salts from petroleum compositions, including crude oil, oil sands and bitumen.

23.     In the Technology Assessment Agreement, COP acknowledged that it was interested in assessing SEI Technology for suitability in meeting COP's requirements for its refining projects.

24.     Unless the Technology Assessment Agreement stated otherwise, all intellectual property based on SEI Technology, including patents and know-how, created pursuant to the agreement would be owned solely by SEI ("SEI IP").

25.     Under the Technology Assessment Agreement, COP agreed SEI would retain ownership of all information and materials owned or controlled by SEI prior to the Effective Date of the Agreement.  ("SEI Information.")

26.     Under the Technology Assessment Agreement, COP agreed that SEI Information is proprietary to SEI, its successors and assigns and had been developed as a trade secret at SEI's expense.

27.     COP also agreed it would not divulge or permit any of its employees, agents, or representatives to license, sublicense, sell, assign, or divulge any data, code, documentation, or information which is SEI Information without the express approval of SEI.

28.     Under the Technology Assessment Agreement, COP agreed that if COP or any of its employees, agents or representatives should attempt to use or dispose of any aspect or component of the SEI Information and SEI IP or any duplication or modification thereof in a manner contrary to the terms of the Technology Assessment Agreement, SEI shall have the right, in addition to such other remedies which may be available to it, to injunctive relief enjoining such acts or attempts, it being acknowledged that legal remedies are inadequate.

29.     Under the Technology Assessment Agreement, SEI and COP agreed the nondisclosure and non-use obligations of the 2004 Confidential Disclosure Agreement would be extended to conform to the nondisclosure and nonuse obligations of the Technology Assessment Agreement.

30.     Under the Technology Assessment Agreement, COP agreed that, with respect to all Confidential and Proprietary Information it received from SEI, it would not permit the duplication, use or disclosure of any such Confidential and Proprietary Information to any person (other than its own employee, agent or representative who must have such information for the performance of its obligations under the Technology Assessment Agreement), unless such duplication, use or disclosure was specifically authorized by SEI in writing.

31.     SEI's technology relating to destabilizing otherwise stable emulsions and removal of impurities and contaminants, such as naphthenic acid and other acids, was particularly important to COP because of the challenges posed by COP's objectives of producing, refining and processing crude oil, especially unconventional or heavy crude oil.

32.     One challenge COP faces is that when it produces, refines and processes these crude oils, they produce stable emulsions.  The presence of emulsions makes it difficult to produce, transport and refine crude oils, especially heavy or unconventional crude oils, and to dispose or process the water created during the production and processing of the crude oils.

33.     Another challenge associated with COP's objective of producing and processing crude oils, especially unconventional or heavy crude oil, is it is these crude oils contain impurities, contaminants, asphaltenes and acids, such as naphthenic acid.

34.     Pursuant to these two agreements, SEI disclosed Confidential Information and SEI Information to COP concerning a wide range of applications for SEI's separation technology.

35.     Pursuant to the 2004 Confidential Disclosure Agreement and the Technology Assessment Agreement, Droughton disclosed to COP methods by which facilities which handle crude oils, especially heavy and unconventional crude oils, could destabilize emulsions and remove impurities, contaminants, asphaltenes and acids, such as napthenic acid, in process streams in those facilities.

36.     Pursuant to the two agreements COP obtained information relating to SEI's discoveries, including the discovery that mesoporous materials, such as zeolite, could, for example, destabilize otherwise stable emulsions, and be used to remove impurities, contaminants, asphaltenes and acids, including napthenic acid, in the production, refining and processing of crude oils, especially heavy or unconventional crude oils.

37.     The information described in the preceding two paragraphs constitutes valuable proprietary information which belonged to SEI and which was substantially secret.  SEI took substantial measures to maintain its secrecy.

38.     SEI used the proprietary information described in the preceding paragraphs in its business and that proprietary information provided SEI with a competitive advantage over others in the industry.

39.     In 2006, COP announced it would enter into a partnership with EnCana, a Canadian oil company, now known as Cenovus.

40.     One purpose of the COP/EnCana partnership would be to expand the heavy oil processing capacity of two COP refineries in the United States, including a multi-billion dollar expansion of a COP refinery in Wood River, Illinois.

41.     The COP and EnCana refinery partnership would be named WRB Refining LLC, and later WRB Refining LP.

42.     Both COP and EnCana were general partners in WRB Refining.

43.     WRB Refining would assume ownership of COP's refineries in Roxana, Illinois and Borger, Texas.  EnCana would own 50% of WRB Refining and COP would own the other 50%.  COP would operate both refineries.

44.     Starting in 2006, COP also announced other major refinery retrofits costing billions of dollars.  COP retrofitted these refineries so that they could process heavy and unconventional crude oil, including crude oil from Canadian oil sands.  The engineering details of refinery retrofits and the like are type of information which, in the normal course of business, are not revealed.

45.     The design and development of processing plants by and for oil companies is by its nature something which is kept confidential.  Contractors working on such projects are obligated to maintain secrecy concerning their work.  Oil company employees are likewise under an obligation to maintain secrecy concerning their work.  The facilities are not available for inspection by the general public.

46.     Without disclosing to Droughton or SEI or making any of the information available to the public, COP used and disclosed SEI's information relating to using mesoporous materials for multiphase separations.

47.     COP's use and disclosure of SEI information was done secretly, under the type of conditions which precluded SEI, Droughton, or the public from discovering that COP was using or disclosing the technology.

48.     On information and belief, COP's unauthorized use of SEI's information took place within COP's secure facilities, such as its research facilities and in facilities in which COP processed, refined and produced oil.  COP kept all information relating to COP's use of SEI information secret.  Even today, it is not possible to examine the products COP has marketed, such as gasoline, and determine whether they benefitted from the use of SEI's technology.

49.     COP also applied for United States patents which were based on information COP obtained from SEI during the course of SEI's and COP's work together.  COP disclosed SEI's information to the United States Patent Office when COP applied for these patents.

50.     For a period of eighteen months, COP's applications for patents, were, by operation of law, kept in confidence by the Patent and Trademark Office.  The United States Patent and Trademark Office could not make public any information concerning COP's patent applications without COP's authority unless it was necessary to carry out the provisions of an Act of Congress or the Director of the Patent and Trademark Office determined there were special circumstances which warranted it.

51.     Although COP was under a duty to obtain prior written consent from SEI before COP divulged or used SEI's Confidential Information for any reason other than the Purpose of the 2004 Confidentiality Agreement, COP did divulge and use that information without seeking or obtaining prior written approval.

52.     At least as late as 2010, 2011 and/or 2012, for the first time, the facts indicating that COP had secretly used SEI's information and technology and divulged it to others became known.

53.     In 2012, the United States Patent Office issued U.S. Patent Number 8,137,565 to COP, the subject of which includes using zeolites to remove naphthenic acid from liquids.

54.     In 2011, the United States Patent Office issued U.S. Patent Number 7,947,182 to COP, the subject of which is removal of naphthenic acid from wastewater streams created during the production and processing of crude oil.  U.S. Patent 7,947,182 discloses using zeolites to remove naphthenic acid from water streams arising from crude oil production and waste water resulting from crude oil refining operations.

55.     Published reports dating from 2011 for the first time describe COP's use of ceramics for separating tar sands crude oil and water.  Mesoporous materials can include certain types of ceramics.

56.     On January 11, 2011, the United States Office issued patent number 7,867,382 ("the '382 patent), entitled "Processing Unconventional and Opportunity Crude Oils Using one or More Mesopore Structured Materials."

57.     SEI owns all rights to the '382 patent, including the right to sue for past and present infringement.

58.     A true and correct copy of the '382 patent is attached as Exhibit C.

59.     On information and belief, COP, Phillips 66 and WRB Refining were aware SEI had applied for and obtained the '382 patent.

60.     Droughton, as President of SEI, disclosed information to COP concerning her separation technology, including the subject matter of the claims of the '382 patent.

10

61.     Until April 2012, COP owned and operated several oil refineries in the United States.

62.     In 2006, COP announced it would enter into a partnership with EnCana, a Canadian oil company, now known as Cenovus.

63.     One purpose of the COP/EnCana partnership would be to expand the heavy oil processing capacity of two COP refineries in the United States, including a multi-billion dollar expansion of a COP refinery in Wood River, Illinois.

64.     The COP and EnCana refinery partnership would be named WRB Refining LLC, and later WRB Refining LP.

65.     Both COP and EnCana were general partners in WRB Refining.

66.     WRB Refining would assume ownership of COP's refineries in Roxana, Illinois and Borger, Texas.  EnCana would own 50% of WRB Refining and COP would own the other 50%.  COP would operate both refineries.

67.     In 2012, COP split its company in two companies, COP and Phillips 66.  Phillips 66 owns the refineries previously owned by COP.

68.     Phillips 66 replaced COP as a general partner in WRB Refining and operates both refineries owned by WRB Refining.

### COUNT I
### PATENT INFRINGEMENT

69.     All preceding paragraphs are incorporated by reference as if fully set forth herein.

70.     Upon information and belief, COP, Phillips 66 and WRB Refining have been or are engaged in processing crude oil, including unconventional and heavy crude oil.

71.     Upon information and belief, COP, Phillips 66 and WRB Refining have been or are using mesoporous materials to, *inter alia,* destabilize emulsions, to remove contaminants and

impurities and to remove acids from process streams using methods which infringe one or more of the claims of the '382 patent.

72.     Upon information and belief, COP, Phillips 66 and WRB Refining have been or are infringing one or more claims of the '382 patent by practicing the processes described in one or more of the claims of the '382 patent.  This has taken place in one or more of their processing plants, such as the Sweeny, Borger, Ferndale, Billings and Wood River refineries.

73.     Upon information and belief, COP's, Phillips 66's and WRB Refining's use of this patented technology comes as a result of COP's copying work prepared by and owned by SEI.

74.     Upon information and belief, COP, Phillips 66 and WRB Refining have been objectively reckless in ignoring the likelihood they were infringing a United States patent.  Their infringement of the '382 patent is therefore willful.

## COUNT II
## BREACH OF CONTRACT (THE 2004 CONFIDENTIAL DISCLOSURE AGREEMENT)

75.     All preceding paragraphs are incorporated by reference as if fully set forth herein.

76.     As described below based on information and belief, COP has breached the 2004 Confidential Disclosure Agreement.

77.     The 2004 Confidential Disclosure Agreement between COP and SEI prohibits COP from divulging to any third party or using itself the Confidential Information SEI disclosed to COP under the 2004 Confidential Disclosure Agreement for any purpose other than evaluating whether to enter into a joint development or other business arrangement with SEI for the further development of the technology.

78.     The 2004 Confidential Disclosure Agreement required COP to protect SEI's Confidential Information, thereby preventing unauthorized disclosure of the information.

79.     Upon information and belief, COP has, for example, used and disclosed SEI's confidential information in violation of the 2004 Confidential Disclosure Agreement, including but not limited to COP's using and disclosing SEI's methods for using mesoporous materials to destabilize emulsions, to remove contaminants, and to remove acids, such as napthenic acid. COP made unauthorized uses and disclosures of SEI's Confidential Information at least in the design, production, refining and processing of crude oil in facilities owned and operated by COP and in applying for United States patents.

80.     SEI has been damaged by COP's breaches of the 2004 Confidential Disclosure Agreement and COP has been unjustly enriched by its breaches of the 2004 Confidential Disclosure Agreement.

81.     To the extent any breach of the 2004 Confidential Disclosure Agreement occurred more than four years before the date of this suit, the discovery rule applies.  The accrual of any such breach of the 2004 Confidential Disclosure Agreement was deferred until SEI knew, or by the exercise of reasonable diligence, should have known, of the facts giving rise to a claim for such breach.  SEI's injuries resulting from any such breach of the 2004 Confidential Disclosure Agreement were inherently undiscoverable and objectively verifiable.

## COUNT III
### BREACH OF CONTRACT (THE TECHNOLOGY ASSESSMENT AGREEMENT)

82.     All preceding paragraphs are incorporated by reference as if fully set forth herein.

83.     As described below and based on information and belief, COP has breached the Technology Assessment Agreement.

84.     Under the Technology Assessment Agreement, all intellectual property based on SEI Technology, including patents and know-how, created pursuant to the agreement is owned solely by SEI.

85.     Under the Technology Assessment Agreement, SEI retains all ownership of all information and materials owned or controlled prior to the Effective Date of the Agreement.

86.     Under the Technology Assessment Agreement, COP is prohibited from, *inter alia,* divulging or permitting any of its employees to, *inter alia,* divulge any SEI Information without SEI's express approval.

87.     The Technology Assessment Agreement prohibits COP from divulging to any third party or using itself the Confidential Information SEI disclosed to COP for any purpose other than evaluating whether to enter into a joint development or other business arrangement for the further development of the technology.

88.     The Technology Assessment Agreement prohibits COP from using or disposing any aspect of SEI's Information and SEI IP in any manner contrary to the terms of the agreement.  COP agreed SEI is entitled to injunctive relief to enjoin such acts.

89.     Under the Technology Assessment Agreement, COP was required not to duplicate, use or disclose any SEI Confidential or Proprietary Information to any person (other than its own employee, agent or representative who must have such information for the performance of its obligations under the agreement), unless such duplication, use or disclosure was specifically authorized by SEI.

90.     Upon information and belief, COP and its employees have, for example, used, divulged and disclosed SEI's information in violation of the Technology Assessment Agreement, including but not limited to using, divulging and disclosing SEI's methods for using mesoporous materials to destabilize emulsions, to remove contaminants, and to remove acids, such as naphthenic acid, in facilities engaged in the production, refining and processing of crude oil.

91.     Upon information and belief, COP has, for example, divulged and disclosed SEI's information when COP applied for and obtained United States patents.  Not only did COP's disclosure of this information to the United States Patent Office violate COP's non-disclosure duties, but also, under the terms of the Technology Assessment Agreement, this intellectual property belongs to SEI.

92.     SEI has been damaged by COP's breaching of the Technology Assessment Agreement and COP has been unjustly enriched by its breaches of the agreement.

93.     To the extent any breach of the Technology Assessment Agreement occurred more than four years before the date of this suit, the discovery rule applies.  The accrual of any such breach of the Technology Assessment Agreement was deferred until SEI knew, or by the exercise of reasonable diligence, should have known, of the facts giving rise to a claim for such breach.  SEI's injuries resulting from any such breach of the Technology Assessment Agreement were inherently undiscoverable and objectively verifiable.

## COUNT IV
## ATTORNEYS' FEES UNDER TEXAS LAW FOR BREACH OF CONTRACT

94.     All preceding paragraphs are incorporated by reference as if fully set forth herein.

95.     On information and belief, COP breached the 2004 Confidentiality Agreement and the Technology Assessment Agreement, both written contracts.

96.     Plaintiff retained counsel, who presented Plaintiff's claim to COP.  COP failed to offer to resolve the dispute within thirty days.

97.     SEI seeks attorneys' fees from COP for each breach of these contracts under Texas Civil Practice and Remedies Code § 38.001.

## COUNT V
### TRADE SECRET MISAPPROPRIATION

98.     All preceding paragraphs are incorporated by reference as if fully set forth herein.

99.     SEI owned valuable proprietary information relating to using mesoporous materials to destabilize emulsions, to remove contaminants, and to remove acids, such as naphthenic acid, in facilities engaged in the production, refining and processing of crude oil.

100.    The proprietary information described above was substantially secret and SEI took substantial measures to maintain its secrecy.

101.    SEI used the proprietary information described in the preceding paragraphs in its business and that proprietary information provided SEI with a competitive advantage over others in the industry.

102.    The proprietary information described in the preceding paragraphs constitutes SEI trade secrets which provided SEI with a competitive advantage over others in the industry.

103.    Under the Technology Assessment Agreement, COP expressly acknowledged that SEI Information, as that term is defined in the agreement, is proprietary to SEI, its successors and assigns and has been developed as a trade secret at SEI's expense.

104.    COP obtained access to SEI's trade secrets through contractual agreements with SEI in which COP was obligated to maintain the confidential nature of SEI's trade secrets and agreed to stringent limitations on how COP could use the information.

105.     On information and belief, COP misappropriated SEI's trade secrets when it used and disclosed SEI's trade secrets relating to using mesoporous materials for removal of impurities, including asphaltenes, metals, particles, water, acids and salts by disclosing it to others, including the United States Patent Office, and using it in its facilities.

16

106.    On information and belief, Phillips 66 and WRB Refining have, though COP's divestiture of Phillips 66 and through its partnership in WRB Refinging, used and continue to use SEI's trade secrets relating to using mesoporous materials to destabilize emulsions, to remove contaminants, and to remove acids, such as naphthenic acid, in facilities engaged in the production, refining and processing of crude oil.

107.    On information and belief, Phillips 66 and WRB Refining actually knew and reasonably should have known that COP breached its duties to SEI to not use or disclose SEI's trade secrets ad that Phillips 66 and WRB Refining have used and continue to use those trade secrets.  Phillips 66 and WRB Refining have therefore misappropriated SEI's trade secrets.

108.    COP's, Phillip 66's and WRB Refining's misappropriation of SEI's trade secrets has damaged SEI.

109.    To the extent any of the misappropriation of SEI's trade secrets occurred more than three years before the date of this suit, the discovery rule applies.  Texas Civil Practice & Remedies Code. § 16.010(a).  SEI did not discover the misappropriation of SEI's trade secrets and SEI could not have discovered it by the exercise of reasonable diligence until after COP publicly disclosed the facts pertaining to its misappropriation in at least as late as 2010.

### COUNT VI
### VIOLATIONS OF THE TEXAS THEFT LIABILITY ACT

110.    All preceding paragraphs are incorporated by reference as if fully set forth herein.

111.    As described above, SEI owned valuable trade secrets, including SEI Information relating to using mesoporous materials for removal of impurities, including asphaltenes, metals, particles, water, acids and salts.

112.    On information and belief, COP, without consent, knowingly stole SEI's trade secrets by using the trade secrets contrary to COP's contractual obligations to SEI and by

communicating SEI's trade secrets to others in the course of COP's designing, constructing and retrofitting facilities used in the production, refining and/or processing of heavy and unconventional crude oil and in secretly applying for United States patents based on SEI's trade secrets.

113.    On information and belief, Phillips 66 and WRB Refining have used and continue to use SEI's trade secrets relating to using mesoporous materials to destabilize emulsions, to remove contaminants, and to remove acids, such as naphthenic acid, in facilities engaged in the production, refining and processing of crude oil.

114.    On information and belief, Phillips 66 and WRB Refining actually knew and reasonably should have known that COP breached its duties to SEI to not disclose SEI's trade secrets.  The facilities owned and operated by Phillips 66 and WRB refining use those trade secrets today.

115.    This constitutes a violation of section 31.05 of the Texas Penal Code with respect to COP, Phillips 66 and WRB Refining.

116.    To the extent the theft of SEI's trade secrets occurred more than three years before the date of this suit, the discovery rule applies.  Texas Civil Practice & Remedies Code. § 16.010(a).  SEI did not discover the misappropriation of SEI's trade secrets and SEI could not have discovered it by the exercise of reasonable diligence until after COP publicly disclosed the facts pertaining to its misappropriation in at least as late as 2010.

### COUNT VII
### QUANTUM MERUIT

117.    All preceding paragraphs are incorporated by reference as if fully set forth herein.

118.    On information and belief, COP accepted, obtained and used the benefits of SEI's work and services when COP used SEI's technology relating to using mesoporous materials to

destabilize emulsions, to remove contaminants, and to remove acids, such as naphthenic acid, in facilities engaged in the production, refining and processing of crude oil.

119.    COP understood and had notice that if COP used the benefits of SEI's work and services described in the preceding paragraph, then SEI expected to be compensated.

120.    COP has not compensated SEI for the uses and benefits of SEI's work and services described above.

121.    To the extent SEI's quantum meruit claim accrued more than four years before the date of this suit, the discovery rule applies.  The accrual of any claim was deferred until SEI knew, or by the exercise of reasonable diligence, should have known, of the facts giving rise to a claim for such action.  SEI's resulting injuries were inherently undiscoverable and objectively verifiable.

**COUNT VIII**
**FRAUDULENT CONCEALMENT**

122.    All preceding paragraphs are incorporated by reference as if fully set forth herein.

123.    To the extent Defendants allege any of SEI's misappropriation claims are barred by a statute of limitations, Defendants' fraudulent concealment of their acts tolled the applicable statute of limitations.

124.    Defendants were under a duty to make disclosure of their wrongful acts but instead concealed those acts.

125.    Defendants duty to make disclosure of its wrongful acts is based at least in part on COP's and SEI's express contractual agreements restricting disclosure of SEI Information, (the 2004 Confidentiality Agreement and the Technology Assessment Agreement), the nature and extent of security precautions taken by SEI to keep SEI Information from the general public, and

the degree to which SEI Information has been placed in the public domain by voluntary disclosure.

### CONDITIONS PRECEDENT

126.   All conditions precedent have been performed or have occurred.

### JURY DEMAND

127.   SEI requests a jury trial on all claims and issues.

### DAMAGES

128.   The Defendants' wrongful conduct has resulted in past and continuing damages to SEI.

129.   COP's breaches of contract caused SEI to suffer general damages within the general jurisdiction of this Court.  SEI also seeks special damages in the amount of the profits it lost due to COP's breaches of contract.

130.   Defendants' misappropriation of SEI's trade secrets and their violation of the Texas Theft Liability Act caused SEI to suffer general damages within the general jurisdiction of this Court.  SEI also seeks special damages in the form of lost profits or reasonable royalties for the proprietary and trade secret information the Defendants stole from SEI, or, in the alternative, to the extent to which the Defendants are unjustly enriched by reason of their theft of SEI's trade secrets.

131.   Defendants have demonstrated a specific intent to cause substantial injury or harm to SEI and have committed acts amounting to fraud, malice and/or gross negligence.  As such, Defendants are liable for exemplary damages under Chapter 41 of the Texas Civil Practice & Remedies Code.  In addition, Defendants' theft of trade secrets constitutes felonious conduct under Texas Penal Code Chapter 31, which exempts their misconduct from the cap provisions of

20

Chapter 41 of the Texas Civil Practice & Remedies Code.  SEI therefore requests exemplary damages, as such damages are necessary to penalize Defendants for their malicious and morally culpable misconduct and to deter similar misconduct in the future.

132.    SEI is entitled to reasonable compensation for the benefits COP obtained through its use if SEI's work and services relating to using mesoporous materials to destabilize emulsions, to remove contaminants, and to remove acids, such as naphthenic acid, in facilities engaged in the production, refining and processing of crude oil.

133.    COP, Phillips 66 and WRB Refining account for and pay to SEI all damages caused by their infringement of the '382 patent, which by statute can be no less than a reasonable royalty;

134.    the infringement by COP, Phillips 66 and WRB Refining is and was willful and objectively reckless and accordingly that SEI is entitled to enhanced damages under 35 U.S.C. § 284;

## PRAYER FOR RELIEF

SEI prays for entry of judgment that:

A.    COP, Phillips 66 and WRB Refining have infringed one or more of the claims of the '382 patent;

B.    COP, Phillips 66 and WRB Refining account for and pay to SEI all damages caused by their infringement of the '382 patent, which by statute can be no less than a reasonable royalty;

C.    the infringement by COP, Phillips 66 and WRB Refining is and was willful and objectively reckless and accordingly that SEI is entitled to enhanced damages under 35 U.S.C. § 284;

D.      this case is an exceptional one within the meaning of 35 U.S.C. § 285 and awarding SEI reasonable attorneys fees;

E.      COP breached the 2004 Confidential Disclosure Agreement;

F.      COP pay to SEI all actual damages caused by its breach of the 2004 Confidential Disclosure Agreement;

G.      SEI be awarded attorney fees under Texas law, TCPRC § 38.001, based on COP's breach of the 2004 Confidential Disclosure Agreement;

H.      COP breached the Technology Assessment Agreement;

I.      COP pay to SEI all actual damages caused by its breach of the Technology Assessment Agreement;

J.      SEI be assigned all rights to United States Patent Numbers 8,137,565, and 7,947,182, as well as all other intellectual property based on information COP obtained from SEI;

K.      an injunction issue under the terms of the Technology Assessment Agreement to prevent further unauthorized use of SEI Information by defendants;

L.      SEI be awarded attorney fees under Texas law, TPRC § 38.001, based on COP's breach of the Technology Assessment Agreement;

M.      COP, Phillips 66 and WRB Refining misappropriated SEI's trade secrets;

N.      SEI be awarded actual damages for COP's, Phillips 66's and WRB Refining's misappropriation of SEI's trade secrets in an amount including, but not limited to SEI's lost profits, a reasonable royalty on Defendants' past and future use of the trade secrets, or in the alternative, damages measured by unjust enrichment;

O.      SEI be awarded exemplary damages for the misappropriation of its trade secrets;

22

P.      an injunction issue to prevent the further use of SEI's trade secrets;

Q.      COP, Phillips 66 and WRB Refining violated the Texas Theft Liability Act;

R.      SEI be awarded actual damages for COP's, Phillips 66's and WRB Refining's violation of the Texas Theft Liability Act in an amount including, but not limited to SEI's lost profits, a reasonable royalty on Defendants' past and future use of the trade secrets, or in the alternative, damages measured by unjust enrichment;

S.      SEI be awarded exemplary damages under Chapter 41 of the Texas Civil Practice & Remedies Code based on COP's, Phillips 66's and WRB Refining's violations of the Texas Theft Liability Act, which exemplary damages are exempt from the cap requirements of Chapter 41 of the Texas Civil Practice & Remedies Code;

T.      SEI be awarded its attorney fees in this action, including but not limited to attorneys fees under Texas Civil Practice and Remedies Code §§ 38.001 and 134.005(b);

U.      SEI be awarded prejudgment and postjudgment interest;

V.      SEI be awarded costs; and

W.      SEI be granted all such other and further relief as the Court may deem just and proper.


Dated: August 29, 2012                              Respectfully submitted,


                                   /s/ Edward W. Goldstein
                                  _____
                                  Edward W. Goldstein – Attorney-in-Charge
                                  Texas Bar No. 08099500
                                  Southern District of Texas Bar No. 586
                                  Alisa A. Lipski
                                  Texas Bar No. 24041345
                                  Southern District of Texas Bar No. 570018
                                  GOLDSTEIN & LIPSKI, P.L.L.C.
                                  1177 West Loop South, Suite 400

Houston, Texas  77027
Telephone: (713) 877-1515
Facsimile: (713) 877-1737
E-Mail: egoldstein@gliplaw.com
         alipski@gliplaw.com

*ATTORNEYS FOR PLAINTIFF*


OF COUNSEL

Gary J. Fischman
Texas Bar Number 00787469
Southern District of Texas Bar No.: 17126
Fischman & Lundwall P.L.L.C.
1177 West Loop South, Suite 400
Houston, Texas  77027
Telephone: (832) 209-4206
Facsimile: (713) 877-1737
E-Mail: gfischman@FandLattorneys.com

*ATTORNEYS FOR PLAINTIFF*


## CERTIFICATE OF SERVICE

     The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 29, 2012.  Any other counsel of record will be served by first class U.S. mail.

                            /s/ Edward W. Goldstein
                            Edward W. Goldstein